UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

THE INFLATABLE ZOO, INC. d/b/a
SPACE WALK and FRANK M. SCURLOCK       CIVIL ACTION

VERSUS                                 NO. 12-1709

ABOUT TO BOUNCE, L.L.C.                SECTION "F"

ORDER AND REASONS

Before the Court is defendant's motion to dismiss and motion for a more definite statement.  For the reasons that follow, the motion to dismiss is GRANTED in part and DENIED in part, and the motion for a more definite statement is DENIED.

Background

This case involves alleged infringement of the trademark "Space Walk," which is a term for an air-inflated object that is often used for bouncing by younger children.

On July 9, 1985, Frank M. Scurlock obtained a trademark on the phrase, "Space Walk," which he used in connection with the sale and marketing of inflatable products through The Inflatable Zoo, Inc. d/b/a Space Walk.[1]  Scurlock's trademark was registered for a term of twenty years from July 9, 1985, which would provide for an expiration date of July 9, 2005.  According to the record, the trademark was cancelled on July 14, 2006.  Scurlock reapplied for the trademark in 2008, and became registered owner of the

---

[1] The 1985 trademark's serial number is 1348281.

1

mark again on April 14, 2009.[2]

About to Bounce, L.L.C. is a company that rents party supplies, including "Space Walk" inflatables.  The company was started in 2007, which is after the expiration and cancellation of Scurlock's trademark on Space Walk.  About to Bounce claims to have purchased inventory from Mr. Scurlock, who allegedly urged About to Bounce to market his products that contain the word "Space Walk" printed on them.  As a result, About to Bounce asserts that it was given an explicit license to use the purported trademark.  About to Bounce owns, or at one time owned, the domain name, http://www.spacewalkrentalneworleans.com, which, when entered, leads to the commercial Web site for About to Bounce.[3]

On June 29, 2012, Scurlock and Inflatable Zoo filed suit in this Court against About to Bounce, alleging violations of unfair competition and trademark infringement under the Federal Lanham Act, 15 U.S.C. § 1125(a); Federal Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); and Louisiana Unfair Trade Practice Act, La. Rev. Stat. Ann. § 51:1401.  In addition to damages, plaintiffs also request that defendant be permanently

---

[2] The 2009 trademark's serial number is 3605921.

[3] After About to Bounce was initially contacted by Mr. Scurlock, the company "parked" the domain, which means all the content from the site was taken down.  About to Bounce now agrees to cancel the domain name.  Upon visiting the domain address in question, the Court was not directed to About to Bounce's Web site.

enjoined from using "Space Walk" in any way, account to plaintiffs for any profits, and perform corrective advertising. About to Bounce now moves to dismiss Inflatable Zoo's claims under Rule 12(b)(6) and for a more definite statement as to the remaining allegations under Rule 12(e).

## I. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Such a motion is rarely granted because it is viewed with disfavor. See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)). In considering a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)). But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true. Kaiser, 677 F.2d at 1050. Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual

3

allegations." Id. at 678. Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. at 678 (internal

4

quotations omitted) (citing Twombly, 550 U.S. at 557). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'", thus, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citation omitted).

In deciding a motion to dismiss, the Court may consider documents that are essentially "part of the pleadings." That is, any documents attached to or incorporated in the plaintiff's complaint that are central to the plaintiff's claim for relief. Causey v. Sewell Cadillac-Chevrolet, Inc., 394 F.3d 285, 288 (5th Cir. 2004) (citing Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public record and other matters subject to judicial notice without converting a motion to dismiss into one for summary judgment. See United States ex rel. Willard v. Humana Health Plan of Tex. Inc., 336 F.3d 375, 379 (5th Cir. 2003).

## II. Discussion

Defendant contends that Inflatable Zoo's claims should be dismissed for failure to state a claim upon which relief can be granted, and, as to Frank Scurlock's claims, a more definite statement should be provided. The Court partially agrees.

5

*I.*

*(1) Trademark Infringement*

To the extent Inflatable Zoo alleges a claim for trademark infringement,[4] the Court finds that the company lacks standing to sue. Under federal law, relief for trademark infringement is available only to the owners of federally-registered trademarks at the time the lawsuit was filed. See 15 U.S.C. § 1114; Ass'n of Co-op. Members, Inc. v. Farmland Indus., Inc., 684 F.2d 1134, 1139 n.4 (5th Cir. 1982); see also Gaia Techs., Inc. v. Reconversion Techs., Inc., 175 F.3d 365, 369 (5th Cir. 1999); Escamilla v. M2 Tech., No. 11-516, 2012 WL 4506081, at *3 (E.D. Tex. July 6, 2012). The term owner encompasses "legal representatives, predecessors, successor and assigns." 15 U.S.C. § 1127. Here, the complaint expressly alleges, "Mr. Scurlock is the owner of United States Federal Trademark Registration No. 1,328,281 pertaining to the trademark and name Space Walk." Further, the complaint and its attached exhibits do not indicate that Inflatable Zoo owns the mark or has ever been assigned ownership or use of the mark.

In response, plaintiffs submit: "Mr. Scurlock is the sole shareholder and owner of The Inflatable Zoo, Inc. d/b/a Space Walk. A fact, although not specifically plead [sic], may be

---

[4] The Court notes, and discusses herein, plaintiffs' trademark infringement pleading deficiencies.

easily ascertained and confirmed during the discovery process." This fact, however, does not save Inflatable Zoo's trademark infringement claim: a corporation is a separate and distinct legal entity from that of its shareholders.  See Thomas v. N.A. Chase Manhattan Bank, 994 F.2d 236, 243 (5th Cir 1993) ("Generally, corporations have an existence separate and distinct from that of their shareholders . . . . [T]he fact that an individual closely affiliated with a corporation (for example, a principal shareholder, or even a sole shareholder), is incidentally injured by an injury to the corporation does not confer on the injured individual standing to sue on the basis of either that indirect injury or the direct injury to the corporation . . . . (citation and internal quotation marks omitted)); Escamilla, 2012 WL 4506081, at *4 (holding that plaintiff, as the lone shareholder, did not have standing to sue for trademark infringement because the trademark was registered in the corporation's name, and shareholders and corporations are separate legal entities).  Accordingly, the Court finds Inflatable Zoo fails to state a claim for trademark infringement upon which relief can be granted.  Frank Scurlock's trademark infringement claim remains viable; however, the Court grants Scurlock leave to amend its complaint, within fourteen days of this order, to properly allege a claim for trademark

infringement.[5]

*(2) Unfair Trade Practices (Federal and State)*

Defendant also submits that Inflatable Zoo fails to state a claim under federal and state law for unfair trade practices.

Under federal law, the Lanham Act "provide[s] protection against unfair and misleading use of another's trademark and unfair competition." Who Dat Yat LLC v. Who Dat? Inc., No. 10-133, 2011 WL 39043, at *6 (E.D. La. Jan. 4, 2011) (quoting Procter & Gamble Co. v. Amway Corp., 242 F.3d 539, 563 (5th Cir. 2001)). Specifically, the relevant Lanham Act provision, 15 U.S.C. § 1125(a), prohibits the use of false designations of origin, false descriptions, and false representations in the advertising and sale of goods and services. See 15 U.S.C. § 1125(a). Unlike trademark infringement, section 1125(a) permits "any person who believes that he or she is likely to be damaged" by the proscribed conduct to bring a civil action. Id.

---

[5] Scurlock has asserted a claim for trademark infringement under the wrong section of the Lanham Act. Section 1125(a) governs unfair trade practices, not trademark infringement. Although "the same facts which would support an action for trademark infringement, would also support an action for unfair competition," the provisions of law that govern the claims are ultimately different. Marathon Mfg. Co. v. Enerlite Prods. Corp., 767 F.2d 214, 216-17 (5th Cir. 1985).
  As it stands now, defendant appears unsure in its submission papers as to whether Scurlock is seeking a claim of trademark infringement because, as mentioned, 15 U.S.C. § 1125(a) is not the statutory source for such a claim. Based on the heading of Count 1 of the complaint, it appears plaintiff is arguing a claim of infringement, which is why this Court is granting leave to amend as opposed to outright dismissal.

Accordingly, where a plaintiff might lack standing to bring a trademark infringement claim, the plaintiff may nevertheless have standing to bring a claim for unfair trade practices.

In fact, the Fifth Circuit has instructed that section 1125(a) is "a remedial statute that should be broadly construed." Harold v. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 798 (5th Cir. 2011) (quoting Schlotzky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co., 520 F.3d 393, 399 (5th Cir. 2008)). That broad construction, however, is subject to the limits of prudential standing. Id. As explained by the Fifth Circuit:

> The Lanham Act incorporates prudential restrictions on standing that ensure that only persons whom Congress intended to protect by passing the Lanham Act have standing to sue under it. Congress's intent in passing the Lanham Act was "to protect persons engaged in [interstate] commerce against unfair competition." Therefore, only persons who have suffered a commercial injury as a result of an anticompetitive conduct have prudential standing to sue under the Lanham Act.

Id. (footnotes omitted). To determine whether a plaintiff has prudential standing, the Court employs a five-factor test:

> (1) the nature of the plaintiff's alleged injury: Is the injury "of a type that Congress sought to redress in providing a private remedy for violations of the antitrust laws"?; (2) the directness or indirectness of the asserted injury; (3) the proximity or remoteness of the party to the alleged injurious conduct; (4) the speculativeness of the damages claim; and (5) the risk of duplicative damages or complexity in apportioning damages.

Id. Without addressing the individual factors, defendant summarily contends that Inflatable Zoo has no connection with the

9

trademark much less a commercial interest in it.  The Court cannot agree.  Inflatable Zoo's claim contains factual allegations sufficient to make relief under the Lanham Act plausible.  For instance, Inflatable Zoo asserts, among other things, that defendant adopted and is using in interstate commerce an internet domain that is confusingly similar to the Space Walk trademark.  This domain name assists in the sale of defendant's services, causing damage to Inflatable Zoo's business reputation and Frank Scurlock's ability to use the mark effectively.  The Court finds the nature of Inflatable Zoo's injury to fall squarely within the scope of the Lanham Act and, therefore, Inflatable Zoo has sufficiently alleged on the face of its pleadings a commercial injury.  As a result, this claim is not dismissed.

    Under state law, the Louisiana Unfair Trade Practices Act prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Rev. Stat. Ann. § 51:1405.  Section 1490 of LUTPA confers a private right of action on "any person who suffers any ascertainable loss of money or movable property, corporeal, or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice."  <u>Id.</u> § 51:1409.  Defendant asserts that this private right of action is limited to direct consumers or business competitors, and that

Inflatable Zoo fails to allege that it is a business competitor of About to Bounce. Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp., Inc., 292 F.3d 471, 480 (5th Cir. 2002). The Court acknowledges that the Fifth Circuit previously limited LUTPA's private right of action to consumers and business competitors, however, the Louisiana Supreme Court has since held that LUTPA includes no such limitation.[6] See Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc., 2009-1633, p. 6 (La. 4/23/10); 35 So. 3d 1053, 1057. The Court finds that the complaint as a whole contains sufficient factual allegations to establish Inflatable Zoo's standing to sue under LUTPA.

*(3) Cybersquatting*

Inflatable Zoo's claim for cybersquatting fails for the same reason as its trademark infringement claim:  only the owner of the mark can sue an alleged infringer. See 15 U.S.C. § 1125(d); Escamilla, 2012 WL 4506081, at *3 (noting that the sole shareholder's claim under the Anticybersquatting Consumer Protection Act fails because the corporation owned the trademark, and corporations and shareholders are distinct legal entities that cannot confer standing upon the other). As a result,

---

[6] For an informative discussion on this recent change in law, see Zachary I. Rosenberg, Recent Development, Consensus at Last: The Broadening of LUTPA Standing in Cheramie v. Shell Deepwater Production, 85 Tul. L. Rev. 1121 (2011).

11

Inflatable Zoo's claim for cybersquatting must be dismissed, but, again, Mr. Scurlock's claim is unaffected.

*II.*

Defendant also requests that Mr. Scurlock provide a more definite statement as to the remaining claims.  Rule 12(e) provides that if a pleading is "so vague or ambiguous that the [opposing] party cannot reasonably prepare a response," the opposing party may move for a more definite statement of that pleading.  Fed. R. Civ. P. 12(e).  Although the complaint may be at times contradictory, the Court does not find the identification of the plaintiffs or the trademarks to be so vague that the defendant cannot reasonably prepare an answer; a more definite statement is not warranted.

Accordingly, IT IS HEREBY ORDERED that the defendant's motion to dismiss is GRANTED in part as to Inflatable Zoo's trademark infringement and cybersquatting claims, and DENIED in part as to Inflatable Zoo's federal and state law unfair trade practices claims.  IT IS FURTHER ORDERED that defendant's motion for a more definite statement is DENIED.

New Orleans, Louisiana, April 11, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE